### SALE OF OUTSTANDING CONTRACTS.

Circuit Court of Cuyahoga County.

## J. A. SPITZIG v. THE OSBORN ENGINEERING CO.*

Decided, December 22, 1905.

*Contracts—Sale of Contract Benefits Includes Right of Action on Account.*

A sale by an individual of all the tangible property of the business of that individual and all "outstanding contracts" transfers to the purchaser the right to bring an action on account of services performed by the individual.

HENRY, J.; WINCH, J., and MARVIN, J., concur.

This proceeding in error is brought to reverse a judgment for $1105.23 recovered by the Osborn Engineering Company against J. A. Spitzig in the Cuyahoga Court of Common Pleas, in an action upon an account for engineering services rendered by F. C. Osborn (the predecessor in business of the Osborn Engineering Co.), preliminary to the construction of the line of the Cleveland & Southeastern Railway Company, of which Spitzig was president.

It is claimed here, first, that the record fails to show that the plaintiff company ever acquired or was the owner of the account, and secondly, that the services in question were not rendered to Spitzig but to his company.

The sale of the assets and business of Osborn to the Osborn Engineering Company is shown by a certain writing purporting to transfer all the tangible property of the business and all "outstanding contracts." This it is claimed is insufficient to transfer the account which is the foundation of this action. Osborn himself was, however, permitted to testify that the account was included in the transfer. Accounts of this sort in question belong to the class of contractual relations which the parties have not

---

*Affirmed without opinion, *Spitzig v. Osborn Engineering Co.*, 78 Ohio State, 397.

expressed but which the law implies, so that an action upon an account properly sounds in contract. We think this account was a contract, and it is clear that it was outstanding. If there is any ambiguity in the expression, Osborn's testimony dispelled all doubt.

On the other question, the evidence shows that Spitzig was promoting the railroad project and had a paper corporation behind him, which, however, was never financed. Before the project fell through Spitzig furnished all the cash and paid all the bills. There never was any cash in the corporate treasury. The correspondence between Osborn and Spitzig shows that Osborn knew of the existence of the corporation and recognized Spitzig's official relationship thereto. But the evidence does not conclusively show that he dealt with the corporation rather than with Spitzig personally. We think it was peculiarly a question for the jury. The jury were properly directed to consider what holding out Spitzig had made in the premises, and whether Osborn was thereby induced to believe and did believe that he was dealing with Spitzig personally. We find no error in the record and the judgment is affirmed.